McCARTY v. JAMES.

1. **Special Verdict**: NO EVIDENCE TO SUPPORT: NEW TRIAL. Where a jury, besides its general verdict for defendant, made certain special findings on material points in defendant's favor, which had no support in the evidence, *held* that the general and special verdict should have been set aside and a new trial granted.

*Appeal from Warren Circuit Court.*

FRIDAY, DECEMBER 7.

THIS is an action against the defendant as the indorser of a promissory note for $1,000, executed to the order of defendant by one Jephtha Turner. The defendant for answer alleges that he was insane at the time he assigned the note to the plaintiff, and that he exchanged the note for one-half the plaintiff's stock of hardware and business in Indianola, which the plaintiff represented to be worth $1000, but which, in fact, was not worth one-half that amount. There was a jury trial, resulting in a verdict and judgment for defendant. The plaintiff appeals.

*Todhunter & Hartman* and *H. W. Maxwell*, for appellant.

*Henderson & Berry*, for appellee.

DAY, CH. J.—The evidence shows that the defendant assigned the note in question, before maturity, to the plaintiff, in exchange for one-half interest in a stock of hardware; that the defendant afterward was adjudged insane, and a guardian was appointed, who returned the stock of hardware to the plaintiff, and received from him therefor a note for $700, secured by mortgage, which the defendant, after he recovered his sanity, took possession of and sold.   The court submitted to the jury the following special finding:· "Do you find that it was mutually agreed between the plaintiff and the guardian of the defendant, that the defendant's liability on the note in suit was fully settled and satisfied at the time the $700 note was given?"   To this the jury answered: "Yes."  This special finding is altogether unsupported by the evidence. But three witnesses testified with reference to the giving of the $700 note.   M. F. Clark, the defendant's guardian, testified as follows:  "He said he had sold and transferred the $1000 note which James endorsed to him, and he gave his note for $700 for James' half of the said stock of hardware. When I sold it back to him, I don't remember that there was anything said in that settlement about James' liability on his endorsement on the $1000 note.   I did not then know anything about that endorsement."   On cross examination this witness said:  "There was nothing said in the settlement I made with McCarty about the $1000 note."   The plaintiff testified as follows:  "I paid him $700 in my note and mortgage at ten per cent.   At the time I bought back his half of said store, there was nothing said about the $1000 note that I got of him when he bought half the store.   Clark wanted to get James out of the business, because he was not adapted to it.   He wanted to sell his interest back to me,

McCarty v. James.

and said he would take less than I got for it. He and I agreed upon $700 for it. Then I gave him the $700 note and mortgage, and took his half of the goods." J. E. Williamson, who was present when the arrangement was effected, testified as follows: "My recollection is that, when Mr. Clark, guardian of Otey James, settled with E. K. McCarty, there was nothing at all said about the $1000 note." This is all the testimony there was upon the subject. It is incomprehensible how the jury upon this testimony could have found "that it was mutually agreed between the plaintiff and the guardian of the defendant that the defendant's liability on the note in suit was fully settled and satisfied at the time the $700 note was given."

The court also submitted the following special finding: "Do you find that the plaintiff knew the defendant to be insane at the time the note was endorsed." To this, also, the jury answered: "Yes." This answer finds as little support from the testimony as the preceding one. The evidence shows without any conflict that up to the time of the trade in question the defendant was engaged in his ordinary business, and it does not appear that the plaintiff or any one else had any suspicion that he was not sane, until after the trade was made. These findings are very material, and it is impossible to tell to what extent they influenced the general verdict. The motion for a new trial should have been sustained.

REVERSED.